UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Antonio Lacy,                                )<br>                                                      )<br>         Plaintiff,                              )<br>                                                      )<br>    vs.                                            )<br>                                                      )<br>City of Indianapolis, Officer Randall Denny, )<br>in his Individual Capacity, Officer Daniel  )<br>Ryan, in his Individual Capacity, Officer  )<br>Richard Frantz, in his Individual Capacity, )<br>and Officer Sally Kirkpatrick, in her        )<br>Individual Capacity,                         )<br>                                                      )<br>         Defendants.                         ) | 1:09-cv-1484-SEB-MJD |

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This cause is before the Court on a motion for summary judgment filed by Defendants City of Indianapolis ("the City"), Officer Randall Denny, Officer Daniel Ryan, Officer Richard Frantz, and Officer Sally Kirkpatrick. Specifically, Defendants seek summary judgment with respect to Plaintiff's excessive force and failure to intervene claims against Officers Denny, Frantz, and Kirkpatrick; Plaintiff's § 1983 claim against the City; and Plaintiff's state tort claims against all of the Officer Defendants and the City. For the reasons detailed herein, Defendants' motion is <u>GRANTED IN PART AND DENIED IN PART</u>.[1]

---

[1] Although Defendants titled their motion as one for summary judgment, they do not seek
(continued...)

**Factual Background**

On the morning of April 25, 2009, Defendant Officer Denny was dispatched to the Tick-Tock Bar. When he arrived at the bar, he spoke with Amanda Henson, Plaintiff's girlfriend, who reported that Plaintiff had assaulted her at the apartment the couple shared. Henson also told Officer Denny that there was an open warrant for Plaintiff's arrest and that he kept two firearms inside the apartment. Thereafter, Officer Denny and Henson traveled to the apartment shared by Henson and Plaintiff. While en route, Officer Denny requested back-up assistance and was later met by Officers Daniel Ryan, Richard Frantz, and Sally Kirkpatrick upon his arrival at the apartment.

At the time of the officers arrival at the apartment, Plaintiff had stepped outside, but became frightened when he saw them and returned inside and closed the door. Once inside, Plaintiff went into the front bedroom and hid in a closet. Plaintiff's friend, Stevie Williams, and Williams's girlfriend were also inside the apartment at that time. According to Officer Kirkpatrick, the officers were concerned knowing that Plaintiff knew of their presence outside and because he was facing a lengthy jail time and had access to firearms. Kirkpatrick ¶¶ 16-18. Officers Denny, Ryan, and Kirkpatrick along with their police dog, K9 Dennis, entered the apartment as Officer Frantz remained outside behind the apartment building to maintain watch on the back door. Frantz Depo.

---

[1](...continued)
summary judgment with regard to all of Plaintiff's claims against all Defendants and, thus, we treat the motion as one for partial summary judgment.

at 17; Kirkpatrick Aff. ¶ 21.

Once inside the apartment, Officers Denny, Ryan, and Kirkpatrick saw Stevie Williams in the living room. Officer Kirkpatrick escorted Williams to the front door and informed another officer standing outside that Williams was not the suspect they were pursuing.

From his position inside the closet, Plaintiff heard a male voice announce the presence of the officers. Shortly thereafter, as the light to the front bedroom was turned on, Plaintiff heard a police officer order Stevie Williams's girlfriend to leave the apartment. According to Officer Kirkpatrick, she promptly escorted the girlfriend from the apartment and did not return until Plaintiff was in custody. Kirkpatrick Aff. ¶¶ 28-34.

Still hiding in the closet, Plaintiff reportedly heard Officer Ryan call out, "Mr. Lacy, are you in this room?," and then heard a dog bark. Because he was afraid of dogs, Plaintiff maintains that he yelled out in response, "I'm in the closet . . . I'm unarmed and I'm coming out." Lacy Dep. at 25, 29. As he exited the closet, Plaintiff maintains that he repeated to the officers present, Ryan, Denny, and Kirkpatrick, that he was "unarmed and not resisting arrest." Id. at 25-27. As the officers and K9 Dennis entered the room, the officers observed Plaintiff standing at the back of the bedroom, and according to Officer Denny, K9 Dennis was still on Officer Ryan's leash at that time. Denny Dep. at 45. Officers Denny and Ryan testified that they could see Plaintiff's hands and that he was not armed. Denny Dep. at 49, Ryan Dep. at 98.

In response to Plaintiff's statements of surrender, Plaintiff maintains that Officer

Ryan stated, "The fuck you is," and released K9 Dennis. Lacy Dep. at 26, 32. Plaintiff testified that it took only a second for K9 Dennis to reach him and that he stood completely still, with his hands in the air as the dog jumped on him. Id. at 33. Then, K9 Dennis proceeded to bite Plaintiff's genitals causing Plaintiff to fall to the ground. According to Plaintiff, the entire time he was being bit, he yelled for the officers to get the dog off of him and did not struggle with the dog. Lacy Dep. at 34-35. The dog bite severely injured Plaintiff's scrotum, and Plaintiff passed out at some point after an ambulance arrived.

      The Indianapolis Metropolitan Police Department ("IMPD") has standard operating procedures that apply to its canine unit. According to their directive, "the use of a K9 on a person falls somewhere between the use of pepper spray/CSOC repellent and an impact weapon on the use of force continuum." Standard Operating Procedure at 1. However, as IMPD representative Sergeant Michael Craig Patton explains, "a K9 is the only tool that we use in law enforcement that we have the ability to not use, or recall, once we've deployed it." Patton Dep. at 41. A general order relating to the use of "canine response" instructs that "officers may only use that degree of force that reasonably appears necessary to apprehend or secure a suspect as governed by the department's Use of Force General Order." IMPD General Order 4.2. The standard operating procedures also provide "[u]nder no circumstances will a K9 officer release the [police service dog] on a subject that has surrendered and is complying with officer commands." Standard Operating Procedure at 11.

In determining whether to release a K9 on a suspect, Sergeant Patton testified that the officer is "guided by his training and the SOP and the general order and the training manual." Patton Dep. at 62. Such a decision is ultimately based upon "what is unfolding in front of him at the time." Id. at 62-63. There is no monitoring of IMPD officers' use of K9s in the field, except to the extent that a supervisor happens to be present. Id. at 75-76.

As noted above, Defendants seek summary judgment with respect to Plaintiff's excessive force and failure to intervene claims against Officers Denny, Frantz, and Kirkpatrick; Plaintiff's § 1983 claim against the City; and Plaintiff's state tort claim against all of the Officer Defendants and the City. We address each of these claims below.

## Legal Analysis

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. See id. at 255. However, neither the "mere existence of some alleged factual dispute between the

5

parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment. Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. Id. at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." Celotex, 477 U.S. at

323.

## Discussion

**A.    The Section 1983 Claims Against Defendant Officers Denny, Frantz, and Kirkpatrick**

Defendants argue that they are entitled to summary judgment with regard to both the excessive force and failure to intervene claims against Officers Denny, Frantz, and Kirkpatrick.  Defendants have not requested summary judgment with regard to the excessive force claim against Officer Ryan and, thus, for purposes of the instant motion only, we assume that Officer Ryan's release of K9 Dennis was indeed excessive and violative of Plaintiff's Fourth Amendment rights.  However, Plaintiff has not responded to Defendants' arguments that his excessive force claims against Officers Denny, Frantz, and Kirkpatrick are untenable for lack of any involvement on their parts in the release of K9 Dennis on Plaintiff.  Thus, we consider the issue waived.  See United States v. Turcotte, 405 F.3d 515, 536 (7th Cir. 2005) ("In [the Seventh Circuit], unsupported and undeveloped arguments are waived.").

With regard to Plaintiff's failure to intervene claims, the Seventh Circuit has explained the basis for such liability as follows:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring.

Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994). "[A] 'realistic opportunity to intervene' may exist whenever an officer could have 'called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop.'" Abdullahi v. City of Madison, 423 F.3d 763, 774 (7th Cir. 2005) (quoting Yang, 37 F.3d at 285). The Seventh Circuit has also held that the failure to intervene analysis almost always implicates questions of fact for the jury because "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all of the evidence, a reasonable jury could not possibly conclude otherwise." Id. (quoting Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997)).

Defendants argue that there is no genuine issue of material fact with regard to Plaintiff's failure to intervene claims against Officers Denny, Frantz, or Kirkpatrick because neither Frantz nor Kirkpatrick was in the bedroom when K9 Dennis was released upon Plaintiff and because as a matter of fact Denny had no realistic opportunity to intervene based on the totality of the circumstances. We address Defendants' argument with regard to each of these officers below.

### Officer Frantz

It is undisputed that Officer Frantz was not present when and at the place Officer Ryan released K9 Dennis. Still, Plaintiff attempts to argue that there is a genuine issue of material fact with regard to Officer Frantz's liability based on his testimony that he knew it was Officer Ryan's intention to release K9 Dennis and because there is no evidence that

8

Frantz cautioned Officer Ryan against releasing a dog on a suspect who surrenders. Plaintiff also contends that Frantz ignored entirely Plaintiff's shouts for help to the officers to get the dog off of him.

In Hood v. Koeller, this Court was faced with a case with similar facts to ours, in which one officer released a dog on a Plaintiff suspect that was hiding in an attic. No. 1:05-cv-1484-RLY-WTL, 2007 U.S. Dist. LEXIS 37005 (S.D. Ind. May 18, 2007)(C.J. Young). There, the Court denied summary judgment with regard to the Plaintiff's excessive force claims against the officer who released the dog, but granted summary judgment in favor of two other officers neither of whom was in the attic at the time the dog was released. In that case, as in ours, Plaintiff maintained that the officers were subject to liability for having known that Plaintiff's constitutional rights were in jeopardy and yet did nothing. Rejecting this argument, Chief Judge Young explained:

> There [was] no evidence indicating that either [officer] knew that the circumstances were such in the attic that [the officer in control of the dog] would never need to release the dog to locate or subdue the suspect." The Court of Appeals in Yang indicated that an officer would need to have reason to know that excessive force was being used or that a constitutional violation was in the process in order to have an obligation to intervene. So, whether their actions are examined with qualified immunity as the issue or ultimate liability, the actions of [these two Defendants] did not violate [Plaintiff's] constitutional rights.

Id. at *13-14.

We find these facts nearly identical to those relating to Officer Frantz in the case before us. As noted above, it is undisputed that Officer Frantz was not in the vicinity of Officer Ryan when Ryan made the decision to release K9 Dennis. Thus, Officer Frantz

9

had no direct knowledge of what was occurring inside the apartment giving rise to Officer Ryan's decision to release Dennis. Further, there is no genuine issue of material fact concerning whether Officer Frantz had reason to know a violation of Plaintiff's constitutional rights was imminent or actually underway or whether he had a realistic opportunity to intervene to prevent such a violation. Defendants' motion for summary judgment is thus meritorious as it relates to the failure to intervene claim against Officer Frantz.

### Officers Kirkpatrick and Denny[2]

Defendants argue that there is no evidence that Officers Kirkpatrick or Denny had a "realistic opportunity to intervene to prevent the harm from occurring." Yang, 37 F.3d at 285. Specifically, they maintain that there is no evidence to establish that either of these officers could have anticipated Officer Ryan's decision to disregard Plaintiff's surrender and release K9 Dennis. Further, there is no evidence to suggest that either of these officers had time to react once Dennis was released. We cannot accept these contentions, given the relevant evidence to the contrary.

---

[2] Defendants assert that there is no evidence that Officer Kirkpatrick was present at the time Officer Ryan and K9 Dennis entered the bedroom where Plaintiff was located. Indeed, Officer Kirkpatrick's affidavit states that she was escorting a woman outside of the apartment at the time K9 Dennis was released and did not see Plaintiff until he was being handcuffed following the attack. Kirkpatrick Aff. ¶¶ 27-31. However, Plaintiff testified that at the time he exited the closet and announced his surrender only to be attacked by K9 Dennis, two male and one female officers (presumably Officers Ryan, Denny, and Kirkpatrick) were present. Lacy Dep. at 30-31. We resolve this dispute of fact, as we must at this juncture, in favor of the non-movant Plaintiff by assuming that Officer Kirkpatrick could have been the female officer present at the time Officer Ryan released K9 Dennis.

"Courts have generally found an issue of fact as to the reasonableness of an officers' conduct . . . where force causing serious injury was employed after [a] suspect was subdued or had otherwise submitted to the officer's authority and was not attempting to flee or resist arrest." Fidler v. City of Indianapolis, 428 F. Supp. 2d 857, 863-64 (7th Cir. 2006). If we assume as we must that Plaintiff did, indeed, exit the closet and clearly announce his surrender in plain sight of Officers Ryan, Denny, and Kirkpatrick, there is a genuine issue of fact regarding whether Officers Denny or Kirkpatrick could or should have attempted to prevent Plaintiff's injuries. The Seventh Circuit has recognized that merely an opportunity to caution an excessive force defendant to stop constitutes a "realistic opportunity to intervene." Abdullahi, 423 F.3d at 774. Because a reasonable jury might conclude based on this evidence that Officers Denny and/or Kirkpatrick had that opportunity to intervene and failed to do so, Defendants' request for summary judgment on these claims against them must be denied.

We note that Defendants' briefing relies heavily on facts relating to the officers' knowledge upon their entry into the apartment which tend to lend credence to their theory that the officers reasonably possessed a "heightened sense of security," e.g. they knew that Plaintiff was facing an arrest on a domestic battery charge, had access to firearms, and was facing considerable jail time upon a conviction. However, these facts do not relate to the ability or duty of Officers Kirkpatrick or Denny to intervene but, rather, to whether Officer Ryan's underlying conduct was excessive, which, as noted above, is assumed for purposes of the instant motion. We discount their significance accordingly.

### B. The Officers' Entitlement to Qualified Immunity

Defendants also argue that Officers Frantz, Denny, and Kirkpatrick are shielded from liability for Plaintiff's failure to intervene claim based on qualified immunity. The Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Seventh Circuit has addressed the principles of qualified immunity as follows:

> The Supreme Court has identified two key inquiries for qualified immunity assertions: (1) whether the facts, taken in the light most favorable to the plaintiffs, show that the defendants violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation. Pearson v. Callahan, 129 S. Ct. 808, 815-16, 172 L. Ed. 2d 565 (2009); Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). Pearson held that the court may decide these questions in whatever order is best suited to the case at hand. 129 S. Ct. at 818. The first question is one of law. The second requires a broader inquiry. Since the purpose of qualified immunity is to protect public officials from guessing about constitutional developments at their peril, the plaintiffs have the burden of showing that the constitutional right was clearly established. Purtell v. Mason, 527 F.3d 615, 621 (7th Cir. 2008). They can do so by showing that there is "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights." Smith v. City of Chicago, 242 F.3d 737, 742 (7th Cir. 2001). When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial. Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1996).

Gonzalez v. City of Elgin, 578 F.3d 526, 540 (2009).

12

In this case, if the jury credits Plaintiff's version of the facts, holding that K9 Dennis was released despite Plaintiff's surrender to the apprehending officers, such force would clearly violate Plaintiff's Fourth Amendment rights. An officer's failure to intervene in such circumstances would, likewise, constitute a Fourth Amendment violation. Abdullahi, 423 F.3d at 775. Thus, taking these facts in the light most favorable to Plaintiff, we hold that he has sufficiently asserted a claim against Officers Denny and Kirkpatrick.

Our second inquiry – whether the Officers' failure to intervene was so egregious that no reasonable person could have believed that it would not violate clearly established rights – also is embedded with issues of material fact that must be resolved by a jury. Any determination of the lawfulness of Officer Ryan's release of K9 Dennis necessarily implicates and affects the reasonableness of Officers Denny and Kirkpatrick's decision not to intervene. Thus, we conclude that the failure to intervene claims against Officers Denny or Kirkpatrick are not barred by the doctrine of qualified immunity and must proceed to trial.

### C. Plaintiff's Monell Claim Against the City of Indianapolis

Plaintiff's Complaint alleges that the City of Indianapolis maintains defective oversight of its police officers' use of K9 dogs for arrests thereby promoting violations of civil rights through applications of excessive force. To state such a claim against the City, commonly referred to as a "Monell" claim following the Supreme Court's decision in Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978), Plaintiff must

be able to establish that the City violated a Plaintiff's constitutional rights in one of the following three ways:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law'; or (3) an allegation that the constitutional injury was caused by a person with 'final policymaking authority.'

McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir. 1995)(citing Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 734-35 (7th Cir. 1994)).

Plaintiff's Monell claim here is primarily based upon the testimony of Sergeant Patton that the City does not routinely monitor officers' uses of K9s in the field.[3] Patton Dep. at 75-77. This inadequate monitoring theory is not based on a policy that is unconstitutional as such. In other words, Plaintiff has not asserted that the City had a policy of authorizing excessive force by its officers. As explained by the United States Supreme Court:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every

---

[3] Plaintiff's Amended Complaint also alleges that the City maintains an inadequate training policy with regard to its police officers' use of K9s. Am. Compl. ¶21. Plaintiff presented no arguments in his Response brief relating to this theory and, thus, we assume he has abandoned it. However, even he had not abandoned that theory, our analysis regarding Plaintiff's claim of "inadequate monitoring" applies equally to any claim based of "inadequate training."

> case to establish both the requisite fault on the part of the municipality, and
> the causal connection between the "policy" and the constitutional
> deprivation.

Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).  The Seventh Circuit has elaborated on the Supreme Court holding in Tuttle, explaining that where, as here, the Plaintiff complains of omissions in a policy "what is needed is evidence that there is a true municipal policy at issue, not a random event." Calhoun v. Ramsey, 408 F.3d 375, 380 (7th Cir. 2005).

Based on our careful review of the Complaint and the summary judgment briefing, we have determined that Plaintiff has proffered no evidence beyond Sergeant Patton's broad statement regarding the City's lack of monitoring as well as Plaintiff's direct encounter with K9 Dennis to support his claim that this alleged lack of monitoring led to the violation of his constitutional rights.  This is clearly an insufficient basis for such a claim, according to the Supreme Court's holding in Tuttle, supra. Having failed to establish a genuine issue of material fact with regard to his claim against the City and having failed to establish a basis for relief under applicable principles of law, summary judgment is appropriate on Plaintiff's Monell claim against the City.

### D. Plaintiff's State Law Claims

Defendants next contend that Plaintiff cannot succeed in proving an assault and battery claim against Officers Denny, Frantz, and Kirkpatrick for the same reasons his excessive force claims failed as to those officers – namely, there is no evidence that any of these officers had physical contact with Plaintiff prior to his arrest or that Plaintiff had

any apprehension of such contact.[4] Plaintiff has failed to respond to this argument in any fashion and, thus, we consider this portion of his assault and battery claim waived. Turcotte, 405 F.3d at 536. Plaintiff's assault and battery claims against Officers Denny, Frantz, and Kirkpatrick are thus dismissed on summary judgment.

Defendants also argue that Officer Ryan is entitled to summary judgment with regard to Plaintiff's assault and battery claims against him because there is no evidence that he acted outside the scope of his employment in the course of the April 25th incident.[5] Indiana Code Section 34-13-3-5(b) provides as follows:

> A lawsuit alleging than an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally.

Ind. Code § 34-13-3-5(b) (Burns 2010).

Clearly, the use of excessive force is not immunized conduct under Indiana law. McConnell v. McKillip, 573 F. Supp. 2d 1090, 1103-04 (S.D. Ind. 2008)(citing Kemezy

---

[4]Under Indiana law, "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Mullins v. Parkview Hosp., Inc., 865 N.E.2d 608, 610 (Ind. 2007) (citing Restatement (Second) of Torts § 13 (1965)). An assault "is effectuated when one acts intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such contact." Cullison v. Medley, 570 N.E.2d 27, *9 (Ind. 1991) (citing Restatement (Second) of Torts § 21 (1965)).

[5]Defendants make this argument with respect to all of the individual Officer Defendants. However, because the Court has already determined that summary judgment is appropriate with respect to the assault and battery claims against Officers Denny, Frantz, and Kirkpatrick, we discuss this argument only as it relates to Officer Ryan.

v. Peters, 622 N.E.2d 1296, 1297 (Ind. 1993)); Fidler v. City of Indianapolis, 428 F. Supp. 2d 857, 866 (S.D. Ind. April 20, 2006); see also Laffoon v. City of Portage, 2011 U.S. Dist. LEXIS 61716 (N. D. Ind. June 8, 2011). "[A] police officer may use only the force that is reasonable and necessary for effecting an arrest. Ind. Code § 35-41-3-3(b). If a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery." Fidler, 428 F. Supp. 2d at 866; see also Rising-Moore v. Wilson, 2005 U.S. Dist. LEXIS 13955, at *41 (S.D. Ind. July 7, 2005)(Barker, J.)("police officers and the governmental entities that employ them can be found liable for battery claims despite the ITCA's extensive immunity coverage. Unless and until the Indiana Supreme Court overrules Kemezy, we cannot conclude as a matter of law that Defendants are immune from liability for [Plaintiff's] battery claim based solely on the ITCA.") Thus, consistent with our prior rulings, we hold that the Indiana Tort Claims Act does not bar Plaintiff's assault and battery claims against Officer Ryan, and Defendants' request for summary judgment accordingly must be denied.

Finally, Defendants maintain that the City is entitled to summary judgment with regard to Plaintiff's assault and battery claims against it. The basis of Defendants' very brief argument on this point is that Indiana does not recognize a claim for "defective policy." Plaintiff again failed to respond to Defendant's argument. However, our research discloses that "Indiana courts have held that 'police officers *and the governmental entities that employ them*" can be found liable for battery claims by individual employees." Pfenning v. Clarkson, 2007 U.S. Dist. LEXIS 5117, at *9 (N.D.

17

Ind. Jan. 23, 2007) (quoting Rising-Moore, 2005 U.S. Dist. LEXIS 13955, at *41.) Plaintiff's Amended Complaint specifically alleges: "The City is also liable for [the tort of assault and battery] by reason of its defective training policy concerning the police officers' use of K-9's for arrests and its defective policy concerning the oversight of police officers' use of K-9's for arrests."  Am. Compl. ¶ 37.  Drawing all inferences in favor of Plaintiff, as we must, we read this allegation to assert assault and battery claims against the City based on a respondeat superior theory as opposed to some unrecognized tort of "defective policy."  Thus, Defendants' request for summary judgment must be denied in this regard.

## Conclusion

For the reasons detailed herein, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART: it is granted in favor of Defendants with regard to Plaintiff's excessive force claims against Officers Denny, Frantz, and Kirkpatrick; Plaintiff's failure to intervene claim against Officer Frantz; his Monell claim against the City; and his state law assault and battery claims against Officers Denny, Frantz, and Kirkpatrick.  Summary judgment is denied with regard to Plaintiff's claims based on a failure to intervene against Officers Denny and Kirkpatrick, and his state law assault and battery claims against Officer Ryan and the City.  Trial shall proceed on these remaining theories of relief, as well as the excessive force claim against Officer Ryan that was not under consideration for purposes of Defendants' motion.

IT IS SO ORDERED.

Date:_____11/10/2011_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Amy L. Cueller
THE CUELLER LAW OFFICE
amy@cuellerlaw.com

Beth Ann Dale
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
bdale@indygov.org

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John C. Ruckelshaus
RUCKELSHAUS  KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com

Cory Christian Voight
INDIANA OFFICE OF THE ATTORNEY GENERAL
cory.voight@atg.in.gov

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org